652 A.2d 383

**Mark A. DETTINGER, Appellant**

**v.**

**Cheryl McCLEARY and Michael McCleary, Appellees.**

Superior Court of Pennsylvania.

Argued Sept. 13, 1994.

Filed Dec. 28, 1994.

Donald B. Swope, Hellam, for appellant.

Thomas A. DiMaggio, York, for appellees.

Before ROWLEY, President Judge, and CIRILLO and DEL SOLE, JJ.

DEL SOLE, Judge:

Appellant takes this appeal from a trial court order which dismissed his complaint for custody in response to the preliminary objections filed by Appellees. The trial court's action was based upon its conclusion that Appellant was unable to rebut the presumption that the child at issue was a child of Appellees' marriage. Because we have determined that this matter was prematurely concluded, we reverse and remand.

In October of 1991, the child at issue was born to Appellee (mother) at a time when she was married to Appellant (husband). Appellant claims to be the biological father of this child and filed the underlying action for custody. Appellant averred that since prior to the birth of the child, mother and her husband have resided together for only sporadic periods of time, and were not residing together during the time the child was conceived or when she was born. He further alleges that mother has resided with a certain named male individual as well as "various other individuals" since the birth of the child. He contends that he was informed by mother that husband has commenced divorce proceedings and that these were pending at the time of this action. These alleged facts are all offered by Appellant in support of his statement that mother and her husband did not constitute an "intact family."

Appellant also maintains that the child was not held out to be a child of the marriage in that the parties mutually agreed to undergo blood testing of Appellant, mother and the child, which indicated that the probability of paternity of Appellant was 99.67%. The Paternity Evaluation Form which is attached and made part of the complaint includes a statement signed by mother which reads: "I CHERYL McCLEARY, do hereby submit to having blood drawn for the purposes of paternity determination on myself and my natural child (children). To the best of my knowledge MARK ALLEN DET-

TINGER [Appellant] is the natural father of said children." In support of his claim that mother and her husband acknowledged Appellant's biological relationship with the child, Appellant further averred that he had been permitted to exercise rights of partial physical custody every week-end from a time shortly subsequent to the birth of the child up to the date the complaint was filed, and he contends he paid for the medical costs associated with the child's birth.

When considering these allegations the trial court remarked that even were Appellant able to prove all of the above, he would not be entitled to prevail because he would be unable to overcome the presumption that the child was born of the marriage. In support of its ruling, the court cited to *Coco v. Vandergrift*, 416 Pa.Super. 444, 611 A.2d 299 (1992), where a trial court's decision to grant preliminary objections and dismiss a complaint for custody was affirmed. Therein the appellant sought custody of a four year old girl, who was born to a married woman. Appellant, who was not the mother's husband sought custody and claimed that mother did not engage in sexual intercourse with her husband during the period in time in which the child was conceived and that mother and her husband facilitated the development of a meaningful relationship between the appellant and the child. The court focused on the strength of the presumption and referred to the Supreme Court decision in *John M. v. Paula T.*, 524 Pa. 306, 571 A.2d 1380 (1990). The language of that decision was said to reveal the Supreme Court's view that the presumption should be irrefutable in cases where the mother, child and husband live together as a family, with the husband assuming parental responsibility. The conclusive nature of the presumption was said to stand where the above situation existed even if the outside party claimed non-access or impotency of the husband.

Even more recently, however, the Supreme Court of Pennsylvania considered the principles it applied in *John M*. In *Jones v. Trojak*, 535 Pa. 95, 634 A.2d 201 (1993), the court expounded the rationale for its *John M*. decision and distinguished it from the case before it. The court stated "In *John*

*M.*, our rationale grew out of this Commonwealth's concern for the survival of the family unit." *Id.* at 106, 634 A.2d at 206. In considering whether a determination of the putative father's paternity was necessary to resolve a child support claim made by mother, the court remarked that it was appropriate to do so since there were "no intact family consideration present." *Id.* at 107, 634 A.2d at 207. The court pointed to the following factual circumstances in reaching this conclusion:

> In this case, however, we agree with the trial court and are convinced that the facts indicate that the presumptive father and mother repudiated their marriage vows long ago. Additionally, we have evidence that the presumptive father did not accept the child as his own. The circumstances before us, as found by the trial court, are that the presumptive father has never financially or emotionally supported Katie. Moreover, the trial court found that during the time Katie was conceived, Jones was not sexually involved with the presumptive father because he was impotent, and this testimony was not rebutted by either the presumptive father or the putative father. Thus, we agree with the Superior Court that there being no intact family considerations present, a determination regarding Tojak's [putative father's] paternity is necessary to resolve the child support claim made by Jones [mother].

*Id.*

The *Jones* court found that the mother was not barred by the doctrine of estoppel from proceeding with her claim against the putative father, because she had presented convincing evidence that her husband had not accepted the child as his own. This was determined despite the putative father's evidence that the husband took his wife to the hospital to give birth, signed the consent forms for a Caesarean delivery, paid the costs of hospitalization by means of his insurance and listed himself as the father on both the birth and baptismal certificates. However, because mother was able to prove that her husband had not accepted the child as his own, mother was able to proceed with a paternity claim with the aid of blood tests.

■■■■■■
■■■■■■

■ While the posture of the present case differs from *Jones* in that here the putative father is seeking to establish his paternity of the child which is being resisted by mother and her husband, and in *Jones* the mother was seeking to establish the putative father's paternity which he resisted, what we can glean from the court's decision is that the result is dependant upon the particular factual circumstances of the parties. *Jones* teaches that this Commonwealth has a concern for the "family unit." The existence of this "unit" is created where the presumed father assumes a parenting role in the life of the child and begins the development of, what is hoped to be, a lifelong bond. While the marriage of mother and husband may ultimately falter, where a parent-child relationship has developed, the Commonwealth's interest in maintaining this relationship remains, as will the presumption that the child is a child of the marriage. However where no "family unit" has ever existed because husband has not taken on the role as parent to the child, the preservation of a "family unit" is not at issue in resolving paternity matters. Where a parent-child relationship has never existed and husband has not taken on the role of parent to the child, the purpose of the presumption, which is to preserve an existing relationship, is no longer served. Therefore critical to a resolution of any paternity claim is a determination of the relationship of the parties based upon the facts.

■ In this case Appellant has offered facts, which call into question the paternity of the child at issue and the familial relationship of mother, husband and the child. Appellant has alleged that mother was not sexually involved with her husband during the period of conception, and that mother's marriage to husband was not, and is not, intact. He asserts that mother has acknowledged that Appellant is the father of the child and that blood tests, to which the parties consented, demonstrate that probability. Appellant, as the putative father, also maintains that the parties permitted him to exercise partial custody rights every weekend and accepted his payment of medical expenses relating to the birth of the child. Because this case was dismissed on preliminary objections no

evidence has been taken to support or refute these allegations. The trial court was unable to determine, based upon the posture of the case, whether husband ever assumed a parental role concerning this child causing a family bond to develop, or whether Appellant was acknowledged all along to be the father of the child. If, as Appellant alleges, such disruption existed in the relationship so that a family unit was never established, then there are no family interests to preserve.

The particular averments made by Appellant made it premature for the trial court to make a ruling based upon preliminary objections. It would be inappropriate for the court to render a decision regarding the paternity of this child absent the receipt of testimony to determine whether mother, husband and child ever existed as a family unit, such that family bonds began to develop. It is because Appellant has raised sufficient allegations to warrant further inquiry, that we remand this matter to the trial court to make a determination regarding the relationship of the parties. If upon the receipt of testimony the court concludes that mother, husband and the child exist as a family, or that they once did so, allowing a parent-child bond to develop, the presumption will stand. If however the court concludes, as in *Jones,* that there is no "family unit" to protect because a familial relationship was never created or because the parties acknowledged Appellant's role as father to the child, then Appellant is to be permitted to offer evidence of paternity. In the later instance the purpose for the presumption no longer exists. The order is reversed and the case is remanded to the trial court for proceedings consistent with this opinion.

Jurisdiction relinquished.